**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHNNY THOMAS, | ) | Case No. 3:21-CV-01882-PAB |
| | ) | |
| Petitioner, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL |
| KENNETH BLACK, WARDEN | ) | ARMSTRONG |
| | ) | |
| Respondent. | ) | |
| | ) | **REPORT & RECOMMENDATION** |

## I.  INTRODUCTION

Petitioner, Johnny Thomas ("Mr. Thomas"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Thomas is serving a sentence of six years for two third-degree felony counts of trafficking in heroin within 1,000 feet of a school in violation of R.C. §§ R.C. 2925.03(A)(1) and (C)(6).

Mr. Thomas asserts two grounds for relief. Respondent, Warden Kenneth Black ("Warden"), filed an answer/return of writ on April 19, 2022. (ECF No. 10). Mr. Thomas filed a motion for leave to reply on May 2, 2022, which I will construe as his traverse. (ECF No. 11).

This matter was referred to me under Local Rule 72.2 on September 2, 2022, to prepare a report and recommendation on Mr. Thomas' petition. (*See* ECF non-document entry dated September 2, 2022). For the reasons set forth below, I recommend that Mr. Thomas' petition be DISMISSED and/or DENIED. I further recommend that the Court not grant Mr. Thomas a certificate of appealability.

## II.   RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings

of fact are presumed correct and can be contravened only if the habeas petitioner shows, by

clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C.

§ 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d

524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by

a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio

Court of Appeals for the Third Appellate District summarized the facts as follows:

> {¶2} On June 26, 2019, Thomas was indicted for two counts of Trafficking in Heroin within 1,000 feet of the boundaries of any school premises in violation of R.C. 2925.03(A)(1), both felonies of the third degree. The first count alleged that Thomas sold 1.3 grams of heroin to a confidential informant ("CI") during a controlled buy within 1,000 feet of an elementary school on May 15, 2019. The second count alleged that Thomas sold 5.01 grams of heroin to a CI during a controlled buy within 1,000 feet of an elementary school on May 23, 2019. Thomas pled not guilty to the charges.

> {¶3} Thomas proceeded to a jury trial on September 19-20, 2019. At trial the State presented evidence that a controlled buy occurred between a CI and Thomas on May 15, 2019, at a park in Marion that was within 1,000 feet of a school. To set up the buy, the CI called Thomas while the CI was with Detective Matthew Baldridge in a vehicle near the park. That call was recorded and played for the jury. Detective Baldridge testified that he was familiar with Thomas's voice and that it was Thomas on the phone making the deal for heroin with the CI. Detective Baldridge testified that he also knew Thomas by the street name "Sonny."

> {¶4} Before the buy occurred, Detective Baldridge searched the CI and then provided money for the controlled buy. The CI then left Detective Baldridge's vehicle and walked to the park. Shortly thereafter the CI was observed being picked up by a blue minivan. Another officer, Deputy Stacy McCoy, was nearby conducting surveillance and she saw the CI get into the minivan, which was registered to Thomas. Deputy McCoy took surveillance video of the CI at the park and of the CI getting into the minivan.

> {¶5} A short time later the CI exited the blue minivan. Another officer at the scene, Lieutenant Chris Adkins, followed the blue minivan and took some pictures of it. After the buy occurred, Lieutenant Adkins passed the driver of the blue minivan and observed Thomas in the vehicle, who he was familiar with and also knew by the name of "Sonny."

2

{¶6} Meanwhile, the CI returned to Detective Baldridge and handed over what was later tested and determined to be 1.3 grams, plus or minus .04 grams, which contained heroin, acetyl fentanyl, and fentanyl.

{¶7} Detective Baldridge and the CI conducted a second controlled buy on May 23, 2019. Again the CI made a call to Thomas while the CI was with Detective Baldridge in a vehicle near the specified park and that call was recorded and played for the jury. The CI indicated to Thomas that he wanted to purchase more heroin this time and a deal was set up to be conducted at the same park as before. Detective Baldridge searched the CI and outfitted the CI with audio/visual recording equipment.

{¶8} Once the CI exited Detective Baldridge's vehicle, the CI walked around the general area of the park and waited to meet Thomas. Eventually the blue minivan registered to Thomas came and picked him up. A brief, blurry glimpse of a man in the driver's seat can be seen on the camera footage from the CI. The CI was in the vehicle for less than a minute, then he returned to Detective Baldridge with what was later determined to be 5.01 grams, plus or minus .04 grams, which contained heroin and fentanyl.

{¶9} After the CI exited the blue minivan registered to Thomas, Deputy McCoy followed the van until she saw Thomas stop under an overpass. Deputy McCoy saw Thomas get out of the driver's side door. She testified that she did not see anyone else in the van. The CI did not testify at trial in this case.

{¶10} Through cross-examination of the State's witnesses, and through photographs taken by the police, the defense established that there were some inconsistencies regarding whether anyone else was in the vehicle with Thomas and the CI. For example, regarding the buy conducted on May 23, 2019, Deputy McCoy testified that she did not see anyone else in the minivan when she drove past it, but the CI had told Detective Baldridge that there were other individuals in the van.

{¶11} In addition, Detective Baldridge admitted on cross-examination that while he did search the CI before the controlled buys, it was not a full strip search. Further, through cross-examination the defense established that none of the State's witnesses had eyes on the CI for the entire time during the operation, that none of the State's witnesses actually observed the transaction occur, and that there was no audio or video placed on the CI for the May 15, 2019 controlled buy.

(ECF No. 10-1, Exhibit 21); *State v. Thomas*, No. 9-19-73, 2020 WL 6852650, 2020-Ohio-5379 (3d Dist. Nov. 23, 2020).

## III. PROCEDURAL HISTORY

### A. <u>State Court Conviction</u>

On June 26, 2019, Mr. Thomas was indicted in the Marion County Court of Common

Pleas on two third-degree felony counts of trafficking in heroin within 1,000 feet of a school in violation of R.C. §§ R.C. 2925.03(A)(1) and (C)(6). (ECF No. 10-1, Exhibit 1). On July 1, 2019, Mr. Thomas pled not guilty to the charges. (ECF No. 10-1, Exhibit 2). On September 17, 2019, Mr. Thomas filed a motion to reveal the identity of the confidential informant who the State alleged purchased drugs from Mr. Thomas. (ECF No. 10-1, Exhibit 7). On September 18, 2019, the State filed a response, stating that it had verbally informed Mr. Thomas' counsel of the confidential informant's identity. (ECF No. 10-1, Exhibit 8). Accordingly, on September 19, 2019, the trial court denied Mr. Thomas' motion as moot. (ECF No. 10-1, Exhibit 13).

On September 20, 2019, the jury convicted Mr. Thomas on both counts. (ECF No. 10-1, Exhibits 10-11). On October 31, 2019, the trial court sentenced Mr. Thomas to a term of 36 months on each count. (ECF No. 10-1, Exhibit 17). The trial court also ordered that Mr. Thomas would serve both sentences consecutively, for a total sentence of six years. *Id*.

## B.  Direct Appeal

On November 8, 2019, Mr. Thomas, through counsel, timely filed a notice of appeal to the Third District Court of Appeals. (ECF No. 10-1, Exhibit 16). On July 14, 2020, Mr. Thomas filed his appellate brief, raising the following assignments of error:

1. Appellant's right under the Confrontation Clause of the Sixth Amendment is violated when testimonial evidence of a confidential informant, who does not testify, is introduced during trial, thereby violating his rights under the U.S. and state constitutions.

2. Defendant-Appellant was denied the effective assistance of counsel thereby depriving him of the right to a fair trial under the state and federal constitutions.

(ECF No. 10-1, Exhibit 19).

On November 24, 2020, the Third Appellate District affirmed Mr. Thomas' conviction. (ECF No. 10-1, Exhibit 21). Mr. Thomas filed a motion for reconsideration, which

4

the Third Appellate District denied on January 21, 2021. (ECF No. 10-1, Exhibit 25).

On February 16, 2021, Mr. Thomas, acting *pro se*, filed a notice of appeal to the Ohio

Supreme Court. (ECF No. 10-1, Exhibit 29). In his memorandum in support of jurisdiction,

Mr. Thomas raised the following propositions of law:[1]

> 1. The appellate court erred in finding Appellant's rights under the confrontation clause of the Sixth Amendment was not violated when testimonial evidence of a confidential informant, who did not testify, is introduced during trial. Contrary to *State v. Phillips*, 27 Ohio St. 2d 294 and *Crawford v. Washington*, 541 U.S. 36, 42 and also *U.S. v. Cromer*, 389 F.3d 662 (6th Cir).
>
> 2. The appellate Court erred in finding appellant was not denied the effective assistance of counsel depriving him of the right to a fair trial under both State and Federal Constitutions.

(ECF No. 10-1, Exhibit 30). On April 27, 2021, the Ohio Supreme Court declined to

accept jurisdiction of the appeal. (ECF No. 10-1, Exhibit 31). On May 5, 2021, Mr. Thomas

filed a motion to reconsider the Ohio Supreme Court's denial of jurisdiction. (ECF No. 32).

On July 6, 2021, the Ohio Supreme Court denied Mr. Thomas' motion for reconsideration.

(ECF No. 10-1, Exhibit 34).

### C. Rule 26(B) Application

On February 17, 2021, Mr. Thomas, acting *pro se*, filed an application to reopen his

direct appeal pursuant to Ohio Appellate Rule 26(B), alleging that he received the ineffective

assistance of appellate counsel. (ECF No. 10-1, Exhibit 35). On April 7, 2021, the Third

Appellate District denied Mr. Thomas' application to reopen his direct appeal. (ECF No. 10-

1, Exhibit 36).

### D. State Court Habeas Petition

On July 26, 2021, Mr. Thomas filed a petition for a writ of habeas corpus in the Ohio

---

[1] Mr. Thomas' propositions of law are reproduced verbatim.

Supreme Court pursuant to R.C. § 2725.01. (ECF No. 10-1, Exhibit 37). Mr. Thomas raised

two grounds for relief:[2]

> 1. Confrontation Clause
>
>    Supporting Facts: Petitioner, Johnny Thomas, is unlawfully being held by respondent Kenneth Black in violation of the U.S. Constitution Sixth 6th amend. Under the U.S. Const. Sixth 6th amend. Every person has a legal right to face ones accusser. Petitioner was deprived of that right during trial and was convicted.
>
> 2. Ineffective assistance of counsel
>
>    Supporting Facts: During trial petitioners trial counsel Caleb Carson failed to object to the "testimonial heresay" statement that was introduce by the prosecutor during trial. Therefore allowing the prosecutor's to introduce statements of witnesses who did not appear at trial which deprived petitioner of both a fair trial, and effective assistance of counsel, which is governed by the U.S. Constitution Sixth 6th amend.

(ECF No. 10-1, Exhibit 37). On September 14, 2021, the Ohio Supreme Court *sua*

*sponte* dismissed Mr. Thomas' petition. (ECF No. 10-1, Exhibit 38).

**E.  Federal Habeas Action**

On September 24, 2021, Mr. Thomas, acting *pro se*, filed his 28 U.S.C. § 2254 habeas

petition. (ECF No. 1). Mr. Thomas' habeas petition raises two grounds for relief:

> 1. Confrontation Clause
>
>    Supporting Facts: I was not given any opportunity to face and cross examine the person that accused me of the crime in which I was convicted of during trial, in violation of the U.S. Constitution.
>
> 2. Ineffective assistance of trial counsel
>
>    Supporting Facts: Trial counsel Caleb Carson failed to object when the prosecutor introduced the statement of a CI during trial who did not appear at trial, also violating my constitutional right to asst. of counsel.

*Id*. The Warden filed an answer/return of writ on April 19, 2022. (ECF No. 10). Mr.

---

[2] Mr. Thomas' grounds for relief are reproduced verbatim.

Thomas filed a motion for leave to file a reply on May 2, 2021, which I will construe as his traverse. (ECF No. 11).

## IV. STANDARDS OF REVIEW AND GOVERNING LAW

### A. <u>Jurisdiction</u>

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Marion County Court of Common Pleas sentenced Mr. Thomas, and the Court takes judicial notice that Marion County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Thomas' § 2254 petition.

### B. <u>Exhaustion and Procedural Default</u>

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require

pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

The Sixth Circuit has developed a four-part test to determine whether a procedural default precludes a federal court from reaching a petitioner's claim: (1) whether there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with; (2) whether the state court "actually enforced" the state procedural rule; (3) whether the rule is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the procedural rule and actual prejudice from the alleged constitutional error. *Barton v. Warden, Southern Ohio Corr. Facility*, 786 F.3d 450, 464 (6th Cir. 2015) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). These factors are commonly

8

known as the "*Maupin*" factors.

As the fourth *Maupin* factor indicates, if a procedural default has occurred, the default can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### C.  Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and

procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

###### D.  AEDPA Standard of Review

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable

facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant

11

to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V. ANALYSIS

### A. <u>Concurrent Sentence Doctrine</u>

The Warden first argues that Mr. Thomas' petition should be dismissed under the "concurrent sentence" doctrine, which provides that a court "may decline to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction." *Winn v. Renico*, 175 F. App'x 728, 731-32 (6th Cir. 2006); *see also Raines v. United States*, 898 F.3d 680, 687 (6th Cir. 2018). The concurrent sentence doctrine "acts as a discretionary bar to judicial review." *Pillette v. Berghuis*, 408 F. App'x 873, 886 n.8 (6th Cir. 2010). It "functions '[a]s a species of harmless-error analysis'" and "aims to conserve judicial resources by permitting courts to avoid adjudicating issues when a favorable ruling could not affect prison time or alleviate some other harm." *Amaya v. United States*, 71 F.4th 487, 491 (6th Cir. 2023) (quoting *Al-Owhali v. United States*, 36 F.4th 461, 466 (2d Cir. 2022)).

The Sixth Circuit "has been admittedly hesitant to apply this doctrine," but "has invoked it when there is no possibility of adverse collateral consequences if the convictions

stand." *Winn*, 175 F. App'x at 732 (citations and quotation omitted). "The types of adverse consequence that can prevent the doctrine from applying include an effect on parole or a potential pardon, the existence of state recidivist statutes, the possibility of impeachment at a future trial, the potential for use as evidence of a prior bad act, and possible stigma." *Pillette*, 808 F. App'x at 886 n. 8. A court "should presume that petitioner's conviction carries adverse collateral consequences, and respondent bears a heavy burden of showing that the risk of collateral consequences is too slight to justify review." *Drummond v. Jenkins*, No. 1:16CV734, 2018 WL 1916884, at *13 (N.D. Ohio Mar. 9, 2018), *report and recommendation adopted*, 2018 WL 1912472 (N.D. Ohio Apr. 23, 2018) (citations and quotations omitted).

The Warden argues that the concurrent sentence doctrine applies here because Mr. Thomas is serving a concurrent 7-10 year sentence on another conviction, which will not expire until after he completes his sentence on the conviction at issue in this proceeding. (ECF No. 10-1, Exhibit 43). However, the Warden has not shown that there is no possibility of adverse consequences from Mr. Thomas' conviction. Courts in this circuit, including the Sixth Circuit, routinely reject application of the doctrine where the respondent does not make such a showing. *See Pillette*, 808 F. App'x at 886 n. 8 (declining to apply concurrent sentence doctrine where respondent made "no effort at all to demonstrate a lack of collateral consequences"); *Wilkens v. Lafler* 487 F. App'x 983, 987 (6th Cir. 2012) (declining to apply doctrine where conviction could impact petitioner's parole opportunities); *Drummond*, 2018 WL 1916884 at *13 (rejecting application of doctrine where there was "a possibility, however slight, the existence of the state court conviction challenged herein . . . might be one factor taken into consideration as part of any potential future clemency proceedings"); *Morgan v.*

*Vashaw*, No. 3:20-CV-02058, 2023 WL 6554178, at *5 (N.D. Ohio May 23, 2023), *report and recommendation adopted*, 2023 WL 6170363 (N.D. Ohio Sept. 21, 2023) (recommending that court decline to invoke concurrent sentence doctrine where petitioner was subject to mandatory post-release control and it was "not clear that there is no possibility of collateral consequences"). I therefore recommend that the Court decline to dismiss Mr. Thomas' petition based on the concurrent sentence doctrine.

**B.  Mr. Thomas' Grounds for Relief**

*1.  Ground One: Confrontation Clause*

In his first ground for relief, Mr. Thomas asserts that his rights under the Confrontation Clause of the Sixth Amendment were violated when the prosecution was permitted to introduce into evidence two written forms the confidential informant filled out after completing the controlled buys, even though the confidential informant did not testify at trial. The Warden argues that Mr. Thomas procedurally defaulted on this claim because he did not object to introduction of the evidence at trial and because he invited the error. I agree. I also alternatively conclude that Mr. Thomas' claim fails on the merits.

*a.  Procedural Default*

As an initial matter, Mr. Thomas procedurally defaulted on his Confrontation Clause claim because he failed to object to the prosecution's introduction of the written forms during trial. Ohio adheres to the "contemporaneous objection" rule, pursuant to which a defendant who fails to contemporaneously object to an alleged trial error waives appellate review of the issue unless the defendant demonstrates plain error. *See Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir. 2004). As the Sixth Circuit has repeatedly held, "Ohio's contemporaneous objection rule is an independent and adequate ground to foreclose relief absent a showing of cause and prejudice." *White v. Mitchell*, 431 F.3d 517, 525 (6th Cir. 2005); *see also*

*Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012) ("Failure to adhere to the 'firmly-established Ohio contemporaneous objection rule' is 'an independent and adequate state ground' of decision.") (quoting *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006)).

The Third Appellate District enforced the contemporaneous objection rule here, holding that, because Mr. Thomas did not object to introduction of the two exhibits at trial, its review was limited to plain error. (ECF No. 10-1, Exhibit 21, ¶ 16). The Ohio Supreme Court then declined to accept jurisdiction over Mr. Thomas' appeal without comment, leaving the Third Appellate District's ruling as the last reasoned decision on the issue. *See Ylst*, 501 U.S. at 805.

It is well-settled that an Ohio court enforces the contemporaneous objection rule for purposes of *Maupin* when it conducts plain error review on appeal. *See Wickline v. Mitchell*, 319 F.3d 813, 823 n.5 (6th Cir. 2003) ("The Ohio Supreme Court's review for plain error constitutes enforcement of this procedural rule, which this court has recognized as an adequate and independent state ground barring federal habeas review."); *Dudas v. Gansheimer*, No. 1:09CV1177, 2010 WL 9038323, at *15 (N.D. Ohio Oct. 1, 2010), *report and recommendation adopted*, 2012 WL 5931783 (N.D. Ohio Nov. 27, 2012) ("The court proceeded to conduct a plain error analysis, but a plain error review by a state court does not constitute a waiver of the state court's procedural bar.").

The Warden is also correct that the Third Appellate District applied a state procedural bar when it held that Mr. Thomas invited any Confrontation Clause error by asking questions about alleged inconsistencies in the confidential informant's statements in the two written forms during cross-examination. "[U]nder Ohio's invited error doctrine, habeas relief is not available when a petitioner or his counsel invited the error about which he complains." *James*

*v. Sheldon*, No. 1:17CV2095, 2019 WL 6221451, at *7 (N.D. Ohio Mar. 1, 2019), *report and recommendation rejected in part*, 2021 WL 405522 (N.D. Ohio Feb. 5, 2021). "Ohio's invited error doct[rine] is . . . firmly established and regularly followed by state courts." *Id*. Thus, "[c]ourts throughout this Circuit have found Ohio's invited error doctrine to be an independent and adequate state ground upon which to preclude federal habeas relief." *Id*. (citing cases); *see also Wagner v. Bradley*, No. 3:17CV1616, 2019 WL 3362013, at *21 (N.D. Ohio May 2, 2019), *report and recommendation adopted*, 2019 WL 2636269 (N.D. Ohio June 27, 2019) (holding that "the Ohio Court of Appeals applied a regularly used state procedural bar that forecloses federal habeas review" when it applied the invited error doctrine). The Third Appellate District expressly applied the invited error doctrine (ECF No. 10-1, Exhibit 21, ¶ 25), and he has therefore procedurally defaulted on his claim by inviting the error of which he now complains.[3]

Mr. Thomas' procedural default can nonetheless be excused if he can demonstrate either both cause and prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. In his traverse, Mr. Thomas argues that his procedural default should be excused because his trial counsel provided ineffective assistance of counsel in failing to object to the prosecution's introduction of the two forms or the prosecution's questions regarding them. It is true that "[a]ttorney error that amounts to ineffective assistance of counsel can constitute 'cause' under the cause and prejudice test." *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (quoting *Lucas v. O'Dea*, 179 F.3d 412,

---

[3] The fact that the Third Appellate District went on to analyze Mr. Thomas' Confrontation Clause claim on the merits does not obviate his procedural defaults. Rather, as the Supreme Court held in *Harris v. Reed*, 489 U.S. 255 (1989), "a state court need not fear reaching the merits of a federal claim in an *alternative* holding." *Id*. at 264 n.10. That is because "[b]y its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law." *Id*.

16

418 (6th Cir. 1999)). However, attorney error does not constitute cause unless the error rises to the level of constitutional ineffective assistance in violation of the Sixth Amendment under *Strickland v. Washington*, 466 U.S. 668 (1984). *Id*. (citing *Murray v. Carrier*, 477 U.S. 478, 487 (1986)). As discussed below in connection with Mr. Thomas' second ground for relief, Mr. Thomas has not established that he received constitutionally ineffective assistance of counsel. Mr. Thomas also does not argue that he has presented new evidence showing that he is actually innocent of the crimes for which he  was convicted. I therefore recommend that the Court dismiss Mr. Thomas' first ground for relief as procedurally defaulted.

### b. *Merits*

Alternatively, I recommend that the Court deny Mr. Thomas' claim on the merits because the Ohio courts did not act contrary to or unreasonably apply controlling law in holding that Mr. Thomas' rights under Confrontation Clause were not violated.

The Confrontation Clause provides that "the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court has "held that this bedrock procedural guarantee applies to both federal and state prosecutions." *Crawford v. Washington*, 541 U.S. 36, 42 (2004). The Confrontation Clause also applies both to in-court testimony and to out-of-court statements introduced at trial. *Id*. at 50-51.

In *Crawford*, the Supreme Court held that the Confrontation Clause applies only to statements that are "testimonial," meaning statements that involve "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id*. at 51 (quoting 2 N. Webster, An American Dictionary of the English Language (1828)). If hearsay evidence is testimonial, "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id*. at 68. Thus, after *Crawford*, "[t]he Confrontation Clause bars the admission of out-of-court testimonial statements made by an

unavailable witness when those statements are offered to prove the truth of the matter asserted and when the defendant did not have a previous opportunity to cross-examine the witness." *Berry v, Capello*, 576 F. App'x 579, 585 (6th Cir. 2014) (citing *Crawford*, 541 U.S. at 53-54).

A statement is not "testimonial" where the declarant "simply was not acting as a *witness*" and "was not *testifying*." *Davis v. Washington*, 547 U.S. 813, 828 (2006) (emphasis in original). Testimonial statements are "directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator." *Id*. at 826. "In deciding whether a statement is testimonial, the court asks 'whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate [her] statement being used against the accused in investigating and prosecuting the crime.'" *Berry*, 576 F. App'x at 585 (quoting *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004)).

Mr. Thomas relies on *Cromer* to argue that the Third Appellate District violated clearly established law when it held that his rights under the Confrontation Clause were not violated. In *Cromer*, the Sixth Circuit held that "statements of a confidential informant are testimonial" because they are "knowingly and purposely made to authorities, accuse someone of a crime, and often are used against the accused at trial." 389 F.3d at 675. The *Cromer* court also held that the defendant's rights under the Confrontation Clause were violated when the prosecution elicited testimony on redirect examination regarding a physical description of the perpetrator. *Id*. 678. In reaching that holding, the *Cromer* court rejected the government's argument that the defendant invited the error through his cross-examination, holding that "[a]s *Crawford* demonstrates . . . the Confrontation Clause, when properly applied, is not dependent

18

upon 'the law of Evidence for the time being.'" *Id.* (quoting *Crawford*, 541 U.S. at 50-51).

Mr. Thomas' argument that this case is akin to *Cromer* is not without some force, and I might agree with him if this case were before me on direct review. However, this case arises in the habeas context and is subject to the limitations of AEDPA. *Cromer* is a Sixth Circuit decision, not a Supreme Court decision, and there is thus potentially some room for doubt regarding whether it was clearly established that the confidential informant's statements in the witness forms were testimonial.

Even assuming that the statements at issue were "testimonial," however, the Third Appellate District did not act contrary to or unreasonably to apply controlling law in holding that introduction of the two confidential informant forms was harmless. It is well-settled that "Confrontation Clause errors are subject to harmless-error analysis." *Vasquez v. Jones*, 496 F.3d 564, 574 (6th Cir. 2007); *see also Reiner v. Woods*, 955 F.3d 549, 555 (6th Cir. 2020) ("Habeas petitioners must have suffered 'actual prejudice' as a result of the [Confrontation Clause] error.") (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

An error is not harmless on habeas review if it "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. "The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." *O'Neal v. McAninch*, 513 U.S. 432, 438 (1995) (emphasis omitted). "Grave doubt means that 'in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *England v. Hart*, 970 F.3d 698, 714 (6th Cir. 2020) (quoting *McAninch*, 513 U.S. at 435). The Supreme Court has "instructed federal courts 'to ask directly, "do I, the judge think that the

19

error substantially influenced the jury's decision?'" *England v. Hart*, 970 F.3d 698, 713-14 (6th Cir. 2020) (quoting *McAninch*, 513 U.S. at 436). In conducting the harmless error analysis, a court considers "a 'host of factors,' which include the witness's importance to the State's case, whether her testimony was cumulative of or corroborated by other testimony, other cross-examination the defendant conducted, and 'of course, the overall strength of the prosecutor's case.'" *Miller*, 994 F.3d at 744 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

Importantly, AEDPA deference applies to a state court's determination that a Confrontation Clause violation was harmless. *See Davis v. Ayala*, 576 U.S. 257, 269 (2015) ("a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable") (quoting *Fry v. Pliler*, 551 U.S. 112, 119 (2007)). I must therefore "determine whether the state court's application of the harmless error analysis in this particular case is contrary to clearly established Supreme Court precedent or is an unreasonable application of that precedent." *Bell v. Hurley*, 97 F. App'x 11, 16 (6th Cir. 2004). Moreover, "[w]hen a state court has ruled on the merits of a state prisoner's claim, a federal court cannot grant relief without first applying both the test [the Supreme] Court outlined in *Brecht* and the one Congress prescribed in AEDPA," and a petitioner must satisfy both tests to obtain habeas relief. *Brown v. Davenport*, 596 U.S. 118, 122, 127 (2022).

In rejecting Mr. Thomas' Confrontation Clause claim, the Third Appellate District held that any error was harmless, reasoning as follows:

> {¶26} Notwithstanding this point, the evidence that Thomas now finds most objectionable is entirely duplicative of statements made otherwise in the record indicating that Thomas was the individual committing drug trafficking. Thomas complains that State's Exhibits 24 and 25 contain statements that "Sonny" sold the drugs; however, officers testified regarding the set-up to the controlled buy through the phone call with Thomas, the minivan used for the transaction that was registered

to Thomas, the observations of Thomas in the minivan after the CI made the purchases, and the knowledge of officers that Thomas went by the street name of "Sonny." Thus the statements on the form are cumulative to other evidence in the record. *State v. Edwards*, 9th Dist. No. 28164, 2017-Ohio-7231, 96 N.E.3d 890, ¶ 42, citing *State v. Williams*, 38 Ohio St.3d 346, 350, 528 N.E.2d 910 (1988) (the erroneous admission of hearsay, cumulative to the testimony of other witnesses at trial, constitutes harmless error, a lower standard than the case before us); *State v. Hernon*, 9th Dist. Medina No. 3081–M, 2001 WL 276348, *4 (March 21, 2001) (noting that error in admitting testimony may be harmless beyond a reasonable doubt if it is cumulative); *see also State v. Baskin*, 3d Dist. Allen No. 1-18-23, 2019-Ohio-2071. Because the evidence on the forms is cumulative to other evidence in the record, we could not find error here, let alone plain error.

{¶27} In arguing that his case should be reversed, Thomas cites *United States v. Cromer*, 389 F.3d 662 (6th Cir. 2004), wherein some specific statements of a CI were found to be testimonial and reversible when the CI did not testify at trial. However, the Sixth Circuit Court of Appeals later acknowledged that violations of the Confrontation Clause are subject to "harmless error" review, and where other testimony satisfies the conviction, an error is harmless. *See U.S. v. Powers*, 500 F.3d 500 (6th Cir. 2007). Ohio Courts have similarly applied a harmless error review when discussing constitutional issues like the Confrontation Clause when there is an objection to evidence. *See State v. Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208, ¶¶ 43-50. Harmless error is a lower standard than plain error, and Thomas cannot meet that lower standard, let alone the higher plain error standard due to the nature of the evidence in this case. *See State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 15 (stating that harmless error is a standard significantly more favorable to the defendant). Based on the evidence presented we cannot find plain error in this case. Therefore, Thomas's first assignment of error is overruled.

(ECF No. 10-1, Exhibit 21).

Applying AEDPA deference, the Third Appellate District's harmless error analysis was not contrary to or an unreasonably application of controlling law. Rather, as the Third Appellate District noted, the confidential informant's statements identifying Mr. Thomas in the two written forms was at least arguably cumulative to other evidence that also identified Mr. Thomas as the individual who sold the confidential informant drugs. That evidence included testimony from police officers regarding the phone calls with Mr. Thomas to set up the controlled buys, the fact that the vehicle in which the drugs were sold was registered to Mr. Thomas, and testimony that Mr. Thomas was observed in the van after the confidential

informant made the purchases. Given AEDPA deference, the Third Appellate District's determination was not so lacking in justification that it constituted an error beyond any possibility for fairminded disagreement. *See Harrington*, 562 U.S. at 102. And, because I conclude that Mr. Thomas cannot satisfy the test under AEDPA, I need not independently analyze whether he can satisfy the *Brecht* test as well. *See Paige v. Fender*, No. 4:21-CV-00579-CEF, 2024 WL 1259250, at *24 (N.D. Ohio Feb. 1, 2024), *report and recommendation adopted*, 2024 WL 1255424 (N.D. Ohio Mar. 25, 2024) (holding that, because state court's determination was not contrary to or an unreasonable application of controlling law under AEDPA, court was not required to analyze *Brecht* factors).[4] I therefore alternatively recommend that the Court deny Mr. Thomas' first ground for relief on the merits.

### 2. *Ground Two: Ineffective Assistance of Trial Counsel*

In his second ground for relief, Mr. Thomas argues that he received the ineffective assistance of trial counsel because his trial counsel failed to object to the State's introduction of the confidential witness forms and the testimony regarding those exhibits. The Warden does not argue that Mr. Thomas procedurally defaulted on his second ground for relief, so I will proceed to consider the merits of his claim.

A petitioner claiming ineffective assistance of counsel must show that: (1) counsel's representation "fell below an objective standard of reasonableness," such that he was not performing as counsel guaranteed under the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-88

---

[4] The fact that the Third Appellate District limited its review to plain error does not change whether its decision is entitled to deference. As the Sixth Circuit held in *Stewart v. Trierweiler*, 867 F.3d 633 (6th Cir. 2017), AEDPA deference applies to a state court's plain-error analysis "if it 'conducts any reasoned elaboration of an issue under federal law.'" *Id*. at 638 (quoting *Fleming v. Metrish*, 556 F.3d 520, 531 (6th Cir. 2009)). Here, despite limiting itself to plain error review, the Third Appellate District conducted a reasoned analysis of the issue under *Crawford*, and AEDPA deference therefore applies.

(1984). Under the first prong, the petitioner must overcome the "strong[] presum[ption] that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. For prejudice, the petitioner must show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The *Strickland* standard is "extremely deferential." *Kelly v. Lazaroff*, 846 F.3d 819, 829 (6th Cir. 2017). "[T]he goal is not to ensure that a criminal defendant be afforded perfect counsel, but rather 'to ensure that the adversarial testing process works to produce a just result under the standards governing decision.'" *Id*. at 830 (quoting *Strickland*, 466 U.S. at 687).

Mr. Thomas raised an ineffective assistance of counsel argument before the Third Appellate District, which rejected it on the merits after conducting a *Strickland* analysis. Where the state court reaches the merits of an ineffective assistance of counsel claim, federal habeas courts provide AEDPA deference to that adjudication under § 2254(d). *Perkins v. McKee,* 411 F. App'x 822, 828 (6th Cir. 2011). The Sixth Circuit has emphasized the double layer of deference that federal courts must give state courts in reviewing federal ineffective assistance of counsel claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. … An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. … Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id*. (quoting *Harrington,* 131 S.Ct. 770, 786-88.)

23

In rejecting Mr. Thomas' *Strickland* claim, the Third Appellate District held as follows:

> {¶30} We have already determined that there was no outcome-determinative error made in this case in the admission of State's Exhibits 24, 25, and the accompanying testimony. Thus Thomas is unable to demonstrate prejudice in this matter and his assignment of error fails for this reason alone.
>
> {¶31} Nevertheless, it is clear from a review of the record that defense counsel was employing a strategy to attempt to establish 'doubt' in this matter through the use of the evidence contained in State's Exhibits 24 and 25, wherein the CI made some arguably conflicting statements, including at least one statement that conflicted with the testimony of another officer. We will not find ineffective assistance of counsel based on trial strategy merely because it was unsuccessful. *See also State v. Mohamed*, 151 Ohio St.3d 320, 2017-Ohio-7468, ¶ 18 ("Questionable trial strategies and tactics, however, do not rise to the level of ineffective assistance of counsel.").
>
> {¶32} Here, defense counsel had to defend a case where Thomas was heard on the phone setting up a drug deal, his vehicle was observed picking up the CI, Thomas was subsequently observed in the vehicle, and the CI returned from his interactions in the vehicle with drugs essentially in the amount he had agreed to buy on the phone from Thomas. Trial counsel tried to sow doubt where he could and we will not find his strategy ineffective because it was not successful in a case with such substantial evidence establishing Thomas's guilt. For all of these reasons, Thomas's second assignment of error is overruled.

(ECF No. 10-1, Exhibit 21).

Applying the doubly-deferential standard under AEDPA, the Third Appellate District did not err in concluding that trial counsel was employing a reasonable trial strategy in pointing to inconsistencies in the confidential informant's statements in the written forms in an attempt to create reasonable doubt about Mr. Thomas' guilt, despite the unfavorable information contained in those documents. Moreover, even assuming that trial counsel was ineffective in failing to object to the introduction of those documents or the accompanying testimony, the Third Appellate District did not act contrary to or unreasonably apply controlling law in concluding that any error was harmless in light of the potentially cumulative nature of that evidence and the other evidence supporting Mr. Thomas' guilt. To

the contrary, there is a "reasonable argument" that Mr. Thomas' trial counsel satisfied *Strickland*'s deferential standard. *Harrington*, 562 U.S. at 105. Accordingly, I recommend that the Court deny Mr. Thomas' second ground for relief.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A.  Legal Standard

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; see also 28 U.S.C.

§ 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B. **Analysis**

Mr. Thomas has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## VII. RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the Court DISMISS and/or DENY Mr. Thomas' petition for a writ of habeas corpus under 28 U.S.C. § 2254.  I also recommend that the Court not grant him a certificate of appealability.

Dated:  April 17, 2024

*/s/ Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.** Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. The**

26

District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).